

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 12, 2024

**BY ECF**

The Honorable George B. Daniels
United States District Judge
500 Pearl Street
Southern District of New York
New York, New York 10007

      Re:    *United States v. Daron Goodman*, S3 20 Cr. 57 (GBD)

Dear Judge Daniels:

      The Government respectfully submits this letter in advance of Daron Goodman's January 16, 2024 sentencing. Goodman was a ranked member of the 59 Brims, a violent street gang that terrorized this community with murder, shootings, robberies, and drug dealing. On January 11, 2020, Goodman was involved in a street fight between the 59 Brims and a rival gang. During that fight, Goodman fired a bullet—a near point blank range—that errantly struck Jason Parris, who was killed. Accordingly, a 20-year sentence is warranted for this heinous crime.

**I.    OFFENSE CONDUCT**

    **A.  Background**

      As set forth in the presentence report dated June 20, 2023 (the "PSR"), the 59 Brims (sometimes referred to as "Primetime") are a violent street gang with a national presence and many gang members in the New York City area. (PSR ¶¶ 26-33.) The 59 Brims were one of the original ten sets formed under the United Bloods Nation ("UBN") on Riker's Island in 1993 by Omar Portee, a/k/a "O.G. Mack." (*Id.*) While the 59 Brims were formed on Riker's Island, the gang has a large national presence, including in California, Georgia, Virginia and North Carolina. (*Id.*) The 59 Brims have many members in Brooklyn, the Bronx, and Manhattan. (*Id.*) The members of the 59 Brims engaged in an array of racketeering activity to further the gang's interests, including acts involving murder and attempted murder; acts involving robbery; narcotics distribution; and acts involving bank fraud and wire fraud.

      The 59 Brims, like most other sets of the Bloods in the UBN, have two separate hierarchical rank structures: the "World Wide Lineup," for 59 Brims members in the prison system (often referred to as the "Prison Lineup") and the "World Wide Lineup in the Town," *i.e.*, members of the 59 Brims that are not incarcerated (often referred to as the "Street Lineup"). The Prison Lineup gives orders to the Street Lineup, and the Street Lineup carries out those orders. (*Id.*) Both the Prison Lineup and the Street Lineup follow the below rank structure (in highest rank order):

- "GF" or God Father
- High 020
- Low 020
- 5 Star General/Gangsta[1]
- 4 Star General/Gangsta
- 3 Star General/Gangsta
- 2 Star General/Gangsta
- 1 Star General/Gangsta

### B. The Defendant

As set forth in the PSR, Goodman was a ranked member of the 59 Brims, holding the position of Lieutenant. (PSR ¶ 34).

Goodman participated in a shooting that led to the death of Jason Parris, a member of the 59 Brims. On January 11, 2020, surveillance video captured Goodman and other 59 Brims gang members (including Darnell Cooper, Jose Rodriguez, and Jamarr Simmons) enter a restaurant located at 1439 Webster Avenue in the Bronx. After several minutes, all four individuals left the restaurant and engaged in conversation with a larger group of people outside of the restaurant, including Parris and members of a rival gang. (*Id.*).

A fight broke out in the middle of the street, and Parris fell to the ground as he was assaulted by the rival gang members. Goodman grabbed a gun, and at point black range, fired it. The bullet that he shot errantly struck Parris. Jason Parris died because of the gunshot. (*Id.*).

### C. Guilty Plea and the Guidelines

On March 29, 2023, the defendant pled guilty, pursuant to a plea agreement with the Government, to participating in the 59 Brims racketeering conspiracy. He further admitted to firing a shot that struck and killed Jason Parris on January 11, 2020. (PSR ¶¶ 3). The statutory maximum penalty for this offense is 20 years' imprisonment.

In the plea agreement, the parties stipulated that the applicable offense level is 40 and that the defendant has zero criminal history points. That would have resulted in a Guidelines sentence of 292 to 365 months' imprisonment. However, because the of the statutory maximum, the Stipulated Guidelines Range is 20 years' imprisonment.

---

[1] Some members of the 59 Brims refer to the "General" positions as "Floors," *i.e.*, 5th Floor, Fourth Floor, etc.

The Probation Department agreed with the parties' calculation of the Guidelines and recommends the statutory maximum sentence of 240 months' imprisonment.

The Government does not oppose the defendant's objections to the PSR, at page 6 of his sentencing submission.

## II.     DISCUSSION

### A.  Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After making that calculation, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), which provides that a sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [in the Guidelines];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### B. The Court Should Impose a Sentence of 20 Years

The Government respectfully submits that a Guidelines sentence of 20 years is appropriate for this defendant. Such a sentence is necessary to reflect the seriousness of his crime, protect the public from his future crimes, and send the strongest message to the public that violence of this kind is unacceptable.

*A substantial sentence is required to account for the defendant's participation in the killing of Jason Paris*. Violence was at the heart of the 59 Brims gang, and Goodman played a crucial role in one of the gang's most violent episodes. After a fight broke up on January 11, 2020, Goodman fired a shot—at near point blank range—that struck and killed Jason Paris. Parris was 36 years old at the time. A 20-year sentence, therefore, is necessary to provide just punishment for the defendant's crime.

To be sure, Goodman's gunshot errantly shot Parris, who was being beaten by rival gang members. However, that a rival gang was attacking Paris, or that Parris was not Goodman's intended victim, does not mitigate the seriousness of this crime. Goodman joined one of the most notoriously violent gangs in the city. He was with those gang members on January 11, 2020, when a fight with a rival gang broke out. And when that fight escalated to violence, Goodman escalated that fight even further by grabbing a gun and firing it at point blank range, which resulted in Parris's death.

*A 20-Year Sentence is Consistent With Other Sentences in this Case*. A 20-year sentence, which the Court also imposed on Jammar Simmons, would be consistent with other sentences in this case. Parris's killing was one of two charged murders in this case, and Goodman shot the gun that killed Parris. Accordingly, his conduct is deserving of among the highest sentences that the Court has imposed in this case.

The defendant urges the Court to sentence Goodman to 84 months' imprisonment, the same sentence it imposed for defendants Ayala, Ervin, Reid, and Wint. Such a sentence would be woefully inadequate to address the goals of sentencing. Unlike Goodman, none of these other defendants were held responsible for ending the life of another human being. Accordingly, to reflect the goals of sentencing and avoid unwarranted sentencing disparities, Goodman's sentence must be substantially above the sentences that the Court imposed for Ayala, Ervin, Reid, and Wint.

*The defendant's upbringing does not offer mitigation for his violent gang activity as an adult*. The Government does not dispute Counsel's recounting of the difficult circumstances of Goodman's childhood. But this argument, too, fails to mitigate the seriousness of the defendant's conduct. Even after graduating from high school and starting college, he decided to join a violent gang, where he rose to position of lieutenant. His decision to participate in the gang's affairs was not one bad decision, but rather reflected a years-long commitment to a criminal enterprise. And by joining a violent gang, the defendant participated in the worst of its violence by firing a gun that killed Parris.

*A substantial sentence is required to deter the defendant and others who think about joining gangs*. Finally, looking beyond the defendant, in a case like this—where the defendant was involved in a sprawling, violent gang, the need for general deterrence is essential. Sentences in

this case will send a message to anyone who might consider joining a gang like the 59 Brims that their conduct will be punished, and that they will be held accountable.

### III. CONCLUSION

For the reasons set forth above, the Court should impose a 240-month sentence, which is within the Stipulated Guidelines Range.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _/s_____
Peter J. Davis
Rushmi Bhaskaran
Assistant United States Attorneys
(212) 637-2468 / 2439

cc: Counsel (by ECF)